1-2-7, 1-6-9, People v. the State of Illinois v. Angela Wells. This is agenda number six. Counsel for the appellant, are you prepared to proceed? May it please the Court, Counsel, I am Assistant Attorney General Gopi Kashyap on behalf of the people of the State of Illinois. The trial court erred in prematurely dismissing Petitioner Section 214-01 petition, but that error was harmless for two independent reasons. Petitioner filed her petition well after the statute of limitations had expired, and there was no basis in law on which to find the petition timely. Second, due to her valid negotiated guilty plea, Petitioner's request to reduce her sentence was meritless and failed as a matter of law, so she could not sustain a subsection B-5 claim. For these reasons, no additional proceedings would have permitted Petitioner to prevail on her 214-01 petition, and this Court should reverse the appellate court's judgment and affirm that of the trial court dismissing the petition. Starting first with the timeliness question, the petition was plainly untimely on its face because it was filed well after the statute of limitations had expired. In subsection C of Section 214-01, the General Assembly provided a two-year limitations period for 214-01 petitions. It specifically stated the start date for the statute of limitations. The clock starts on the date of the judgment or order being challenged. So here, the clock started in October of 2001 when Petitioner's sentence was entered. It is undisputed that she did not file her petition within the two-year period, so the petition was untimely. Now, Petitioner tries to avoid the time bar by arguing that the clock actually didn't start until subsection B-5 became effective on January 1, 2016. But the legislature was responsible for determining whether the statute of limitations should be told or create exceptions to it, and it did not do so. And there are clear indicators that show that the legislature did not intend to accept out subsection B-5 petitions, and that it expected that claims under B-5 should be filed within the two-year limitations period as set forth in subsection C. So first, the legislature placed subsection B-5 within Section 214-01 itself. It didn't create a separate statutory remedy. It didn't put it in the Post-Conviction Hearing Act. It didn't put it in any other place. It deliberately placed it within Section 214-01. Let me ask you this. So when we consider the purpose of the new statutory language regarding the consideration of the domestic violence, do we effectuate the purpose of that if we say that because years ago you didn't file something, now we have this new statute that allows you to file this for consideration of certain issues? I mean, are we just ignoring the purpose of the statute? No, Your Honor. We're not ignoring the purpose because the legislature's purpose here was not to reopen every sentencing order that was ever entered where a defendant may have been influenced by domestic violence in committing his or her crime. The legislature stated its intent that it only wanted to reach back two years. And this goes to the legislative authority to enact statutes of limitation. Claims that are meritorious will be barred by statutes of limitation if they're not filed on time. And the legislature decided as a matter of policy, and recall that this is a public policy measure. This is not a constitutional imperative. This is something that the legislature decided on considering all of the factors and decided that reopening old judgments back from 2001, 2005, whatever it is, was just maybe perhaps it was too costly or perhaps they didn't want to allow everyone to reopen their sentencing judgments, arguably because maybe facts would be lost, maybe evidence would be lost, and it would be difficult to ascertain whether the sentence should be reduced. But this all goes to what the legislature intended. And if the legislature wanted to reopen judgments that were older, it certainly could have said so. But there are indicators that it didn't intend to do so. For example, the legislature could have restarted the clock in Subsection C. It could have stated that petitions seeking relief under B-5, the clock would start on January 1, 2016, the effective date of the statute. It did not do so. There are also a number of exceptions within Subsection C. At the time the legislature enacted Subsection B-5, there were already three exceptions. There was one for certain proceedings under the Adoption Act. There was another for certain proceedings under the Juvenile Court Act. And then there was another for a motion based on Section 116-3 of the Criminal Code, which pertains to DNA testing. So the legislature knew how to create exceptions. It knew how to exempt them. So the fact that she entered a fully negotiated guilty plea does not affect the time bar question, but it does affect whether she's entitled to relief under Subsection B-5. Her fully negotiated guilty plea, and this Court has repeatedly stated this, waived any claim that her sentence was too long or excessive. Those are the basic principles of contract that apply to fully negotiated guilty pleas. It's within Rule 604D, and this Court has numerous cases stating that when a defendant enters a fully negotiated guilty plea, the defendant waives his or her right to challenge the sentence as excessive. And that includes rights that existed at the time and rights that might develop based on future developments. This Court just held that in People v. Robert Jones last year when it considered whether the juvenile defendant, when the juvenile entered a negotiated guilty plea, had waived a Miller claim. And this is no different. Petitioner anticipated, she may not have anticipated that the law would change, but she certainly thought that the 40-year sentence was fair based on the circumstances, and she entered that plea. Now, again, if the legislature wants to change that and it wants to change how things work for negotiated guilty pleas, it can do so. It can amend the language of the statute. But as written, the statute allows only for mitigation of sentence, and Petitioner's fully negotiated guilty plea precludes her from challenging that sentence. Counsel, there is no question that if we use the approach that you're approaching, that you proposed this morning, this particular Petitioner is going to be barred from having her claim considered. 1401 is somewhat of an equitable provision. Why wouldn't we give her a little equity in this case? So there's two different components to this case. One is the time bar, and then the other is the fully negotiated plea, as Justice Burke mentioned. So as for the time bar, there is no role that equity can play other than that which the General Assembly provided in subsection C. Time bars by their statute of limitation, by their nature, result in inequities. There are always going to be people with strong claims to relief that will not be entitled to relief because the General Assembly decided to set a time limit, and this is what happened here. The General Assembly decided that only certain persons or certain classes of people would be able to get relief. Certainly people that fall on one side of the line with just as strong claims as others that fall on the other side of the line will be precluded, but that's inherent in any statute of limitation. Moreover, the legislature stated within subsection C the statutory tolling grounds, that they're grounded in equity. Those grounds are when a person is under legal disability or duress, or when the grounds for relief have been fraudulently concealed, and those are equitable grounds that the legislature chose to include. Back in Morgan v. People, which was decades ago, this court explained that those were the equitable grounds that entitled the person to tolling, and there aren't any others. Petitioner relies on legal disability as saying that she was under a legal disability for the entire period until subsection B-5 became effective, but in Morgan, this court explained that legal disability only means when the person is unable to file due to being a minor or insane. This court interpreted that provision for the first time back in Morgan, and that's what it held, and so the fact that subsection B-5 didn't exist is not a basis for tolling based on legal disability, and there are no other tolling provisions. There's a suggestion here that the fact that she didn't discover the impact of domestic violence on her, and that factual component would make it so we should allow her to toll the period, but again, the legislature only stated that the statute of limitations could be tolled based on fraudulent concealment. If it was just the discovery of a new fact, there would be no need to have the fraudulent concealment exception. It would simply be that the discovery of a new fact would entitle someone to toll the limitations period. The fact that the General Assembly said that could only occur if the factual grounds were fraudulently concealed means that there are no other exceptions based on discovery of fact other than those that the legislature provided. So, for example, under section 116-3 of the criminal code, which is a stated exception in subsection C, if you get the results of DNA testing, which is a new fact, then section 214.01 would be available, and there is no time bar. So all of this is to say that the General Assembly may decide who is entitled to relief under this statute. There are no other equitable exceptions for the time limit. To your point, Justice Neville, for the valid negotiated guilty plea, it would still be the same result because to say that a person who agreed to a particular sentence should now be able to reopen their plea would be contrary to how this Court has always looked at negotiated guilty pleas, especially when the sentence was a material part of the bargain. Taking it back just a step, people who enter open guilty pleas are allowed to challenge their sentences as excessive. People who enter negotiated pleas are not. This is no different. Merely because the legislature enacted another remedy that applies later doesn't mean that those principles change. A person who enters a negotiated plea cannot challenge her sentence as excessive, but a person who enters an open plea may. Those are the basic contract principles that apply in this case to preclude Petitioner from... Justice, how do you read the, getting back to Justice Neville's question a little bit, how do you read the appellate court's reliance on Warren County and equitable consideration? So Warren County and those other cases, I believe Petitioner cited a few others in her brief, specifically talk about the diligence requirement that applies once you've passed the time bar. And so this Court stated, and people, I'm going to butcher this name, but people in Montage, that whether a claim is meritorious and whether it is timely filed are separate inquiries. Under Section 214.01, under a typical claim, a Petitioner can seek to reopen a judgment based on facts that were unknown at the time. So long as the claim is filed on time, within the two-year period, then the inquiry turns to diligence. Even if the claim is timely filed, the Petitioner still must have exercised diligence in bringing it. And in that context, this Court has held that for purposes of diligence, there is, equity plays a role. You can decide that it would be inequitable based on the nature of the claim or the specific facts of the case that should relax the diligence requirement. And that's what Warren County is referring to. But there is no case from this Court that has applied equity other than the statutory tolling provisions that the legislature provided to excuse an untimely filing. This Court has repeatedly stated that the statute of limitations is mandatory. And here, the General Assembly, again, it may amend the provision to accept out subsection B-5. And I would note that there is a bill pending in the legislature to do so. But it has been pending for, I'm going to give you, it's HB 4847. And it's been in the Senate Assignments Committee as of May of 2022. So the General Assembly is considering it. And in its considered policy judgment, it may decide to add the exception for the time bar. But it hasn't done so yet. And so Petitioner's claim is barred. If it were amended, and I understand that's just pending, but this is just kind of a hypothetical question, how would that impact someone who entered a plea guilty? If all the legislature does is amend the time bar and only in states that, you know, accepts out subsection B-5 claims like it has for others, then it wouldn't affect this petitioner because the legislature hasn't stated within the statute that the state seeks to reopen fully negotiated guilty pleas. The legislature would have to state that, and it could do so. It could use the right language, but it would have to clearly state it. And under the plain language of subsection B-5 as written, the legislature has not done that. And so until it does, unfortunately, that means that someone who pleaded guilty under a fully negotiated plea would not be entitled to subsection B-5 relief. And ultimately here, even though relief under B-5 didn't exist at the time that the defendant entered her plea guilty, obviously she was aware of her personal circumstances and could weigh the decision as to whether or not to take the negotiated guilty plea. Yes, it's undisputed that she was aware of the abuse that her husband inflicted on her, as she alleges. Now, I think the purpose of, just to take it back a little, I think the purpose of subsection B-5, at least according to the legislative history, is to bring in persons who didn't really realize the impact that the domestic violence had on their crime. And so, you know, to the extent that that is, you know, she didn't discover the impact, I think that is sort of the intent of B-5. But again, the General Assembly didn't intend to reopen all the old judgments. If we look at this in context, subsection B-5 was passed as part of a more comprehensive bill where the General Assembly also added domestic violence as a mitigating factor to the sentencing factors. So it's twofold. The General Assembly added the mitigating factor, and then it provided relief for a certain subset of defendants. And those go hand-in-hand, and that's why Petitioner is not entitled to relief, because the General Assembly decided not to accept out B-5 claims. So unless this Court has any further questions, the people ask that the Court reverse the appellate court's judgment and affirm that of the trial court. Thank you very much, ma'am. Counsel for the appellate. Thank you. Good morning, Your Honors. Jonathan Krieger for Angela Wells. May it please the Court. In this case, the trial court denied my client the right to procedural due process, a right this Court found in People v. Stecker to be one of utmost importance. My client's petition under Section 2-1401B-5 challenged her sentence based on the connection between her crime and her long history of being abused at the hands of her husband, Ronald. State filed a motion to dismiss, which the Court quickly granted without giving my client a chance to respond. This was undisputedly a due process violation, and the case should be remanded to give my client the opportunity to respond that she was denied in the circuit court. My opposing counsel has offered arguments for why my client should be denied her day in court, but the State's arguments are based on an undeveloped record, a record that is undeveloped precisely because of the due process violation that occurred. Even on this record, though, the record shows that the petition was not patently incurable. Rather, my client would have many arguments to respond to the State's procedural objections, arguments based on the text of Section B-5, based on its structure, and based on equity. Now, the State— Aren't you able to make those arguments now, though? I'm making those arguments now, but we also don't know what could have been raised outside of the record. We know, for instance, that Ronald tried to control her legal arguments from behind prison bars until very recently. It's possible there would be an argument that could be made based on duress. We don't have those allegations now. So although I can make arguments based on the record, there might be other arguments out there. There's also other things that occur. For instance, the State could have a change of heart and decide to waive the two-year limit, assuming it applies, as it's done in other cases. Indeed, throughout these proceedings, the State has dropped argument after argument. Aren't you asking the Court to apply the statute retroactively? And is there any evidence that the legislature intended that to happen? I don't think the question is retroactive versus prospective. The way the parties have framed it is whether the petition would be filed in a timely manner. I mean, Subsection B-5, on its own basis, is looking at convictions that have already happened. So it's looking back. The question is how far it looks back. And if the case were remanded, the petition, the Dupuis violation here would not be harmless because there are many good arguments for why Subsection B-5 doesn't have a timeliness restriction. It's a standalone claim. There are five requirements that are listed. None of them involve timeliness. Instead, the legislature chose to include a diligence requirement that the defendant did not, wasn't aware of the mitigating nature, and couldn't have done so through diligence. And so that, rather than the timeliness, is what the legislature thought was important. In addition, Subsection B-5 is based on actual innocence case law. The State concedes that that language was borrowed. And in actual innocence cases, there's no time limit. So if the petition were remanded, McKay would have another argument to raise, which is that because of the basis in actual innocence law, the 2-year limit does not apply to Subsection B-5. Now, my opposing counsel argues it was placed in 214.01, and that shows that the 2-year limit applies, but not all of the limit, the exceptions to the 2-year limit even appear in Subsection C. Void judgments, for instance, aren't discussed there. And there are also equitable considerations. So that even if Your Honors found that the 2-year limit did apply, if the case were remanded, my client could argue that it should be relaxed in her case. And it may pursue the discussion about equity here. To be clear, we're talking about a statute that allows an attack on a final judgment, both in civil and criminal cases. And the statute provides that this petition must be filed within 2 years of the judgment that is being attacked. And you've argued here that, for a series of reasons, that equity, that fairness should be a basis to ignore the statute of limitations. You agree that this petition is untimely, correct? No, Your Honor, I don't. The argument is, the question is whether the due process violation was harmless, and we have a lot of arguments for why it's not harmless. One of the arguments is the 2-year limit does not apply. This is what I'm concerned about. First of all, are there other cases in either the civil or the criminal context that you're aware of where the court has relaxed the statute of limitation based on ideas of equity? And really, in a bigger way, if we were to accept that, what import does that have on all the other civil and criminal cases in which there's an attack on any final judgment? I'm not aware of any cases explicitly waiving the 2-year limit based on equitable concerns. But the Court has, contrary to what opposing counsel has argued, the Court has not just construed the equitable considerations to apply to diligence. In the Lawton case, for instance, this Court found that 214.01, Section 214.01 should be interpreted as justice requires. And so this Court certainly has space within its precedent to apply Section 214.01 in a broad way. How does the Court apply that as justice requires? So every time in a 214.01, whether it's a civil case or a criminal case, the Court should be just, how does the Court go about deciding, well, this case is beyond two years, but this is the case that's going to go forward? Because I think justice requires. How does the Court do that? On a case-by-case basis, Your Honor, and in this case, my client has very strong equities that would support relaxing the 2-year limit. She was abused for a long time, violently, emotionally, physically, emotionally. Her husband tried to control her legal proceedings after she had already been convicted. And so to answer your question, it has to be on a case-by-case basis. That's how equity generally, equitable decisions are generally made, looking at the fairness and concerns of equity. Would you agree that the appellate court's citation to one county and equitable considerations to relax applicable due diligence standards was misplaced? Because, again, as counsel pointed out, that's the due diligence problem, you know, meritorious defense, due diligence, as opposed to relaxing a statute of limitations. No, I think it was an excellent citation, Your Honor. In that case, the Court only found that equitable concerns don't make a difference in cases involving void judgment. It didn't limit it otherwise. It was interpreting Vincent, which had seemed to restrict the equitable power of Section 2421, and it said, no, it appeared that we might have done that, but that's not it. Equity only doesn't apply to void judgments. And so, no, I think it was a valid citation, and we should look at the context in which the relief that was ordered. The Court sent it back, recognized the due process violation, just sent it back to say she should get a chance to respond to the State's motion to dismiss, and that that would be, and that the Warren County case would be one that would support that. And, indeed, it would support that. In addition, my client could argue that the legislative purpose would be thwarted by applying the two-year limit. The legislature, in enacting subsection B-5, recognized the crisis of domestic violence, all the harm that it caused on both victims and society at large. And applying the two-year limit in a strict way would be contrary to that purpose because it would remove a large swath of Petitioners from the, from getting any relief at all. But the appellate court didn't find that the two-year statute of limitations under 1401C did not apply to this. They didn't make that finding, correct? That's right, Your Honor. Given the procedural process. Right. Because no case has found that. Abu Sharif, Lee, Donahoe, no case has found that, when we're looking at B-5, that the two-year statute of limitations does not apply. No. In other cases, the Court has, in the Reach case, for instance, the State decided not to raise the two-year limit. None of those appellate court cases have found that. Those appellate court cases are poorly reasoned. They don't consider the purpose of the section, subsection B-5, and how it would be contradicted by applying the two-year limit. These are also very recent cases. This is Your Honor's first chance to weigh in on this. And the decision doesn't need to be made. Your Honors don't need to decide the two-year limit applies, it doesn't apply. Try to bring this back to the Stecker standard, which is whether the petition is patently incurable. And I think all the briefing has shown there are good reasons, based on the structure, based on the plain text, and based on equity, that my client could raise on remand. And we're just asking for this Court to, from the Third District, just ask to get it sent back so that my client can have a chance to respond. That's how we framed it, and that's how we would ask for Your Honors to resolve the case. Now, my opposing counsel also raises the fact that my client pled guilty and argues that that would waive the subsection B-5 claim. But the State has forfeited that argument. It was not raised in the Petition for Relief to Appeal. Assuming this Court addresses that issue, again, the petition is not patently incurable with regard in answering that objection. Subsection B-5 does not distinguish between dispositions based on a jury trial versus a bench trial versus a guilty plea. And the legislature knows how to distinguish between dispositions based on a trial versus based on a guilty plea. Section 116.3 of the Forensic Testing Statute, in its initial iteration, it only applied to, on its plain language, it only applied to trials. It said whether identity was an issue at trial. And this Court in People v. O'Connell rightly looked at the language and said, you know, guilty plea Petitioners, I'm sorry. You're out of luck. It was excluded. This is the reverse of that. Look at the five requirements of Section B-5. None of them distinguish between a trial disposition and a guilty plea disposition. And applying that plain language would show that Petitioners who plead guilty can seek relief under subsection B-5. As I noted, subsection B-5 was also based on actual innocence law. And in People v. Reed, this Court found that defendants who plead guilty can nonetheless raise actual innocence claims. Now, the State argues that under People v. Jones, that that supports finding that my client had waived her right to raise a claim by pleading guilty. But Jones was concerned with future changes in substantive law where subsection B-5 is specifically focused at prior convictions, convictions that had already happened and giving upsetting or reconsidering sentences that had already been imposed. Now, my opposing counsel also attempts to limit this argument, which would reduce the pool of Petitioners so broadly by claiming that the waiver only applies to negotiated be excluded. And so what my opposing counsel is asking for is for many, many Petitioners to be excluded from raising these claims. And that would be contrary to the purpose of the legislature. This case shows nothing in common with People v. Stecker. In that case, the Petitioner was raising an apprendee claim that had previously been rejected. By contrast, my client, if the case were remanded, would have a solid claim with good responses to the State's procedural objections. The petition was, therefore, not patently incurable. Unless Your Honors have any further questions, we would ask this Court to affirm the reasonable relief ordered by the Third District Appellate Court and remand for further proceedings under subsection B-5. Thank you very much, sir. Counsel to the appellant, do you wish to reply? Excuse me. I'd like to just pick up on where counsel discussed People v. Robert Jones. Miller is retroactive. The Court is aware that Miller is retroactive, so it does affect preexisting judgments just like Section 214 of 1B-5 does. Counsel suggested that the rule of Robert Jones would treat open pleas the same as negotiated guilty pleas, but that's simply untrue. A defendant who enters an open plea and gets a mandatory life sentence would be subject to the Miller rule. And so Robert Jones is directly on point here. In Robert Jones, the defendant didn't anticipate that the rules would change, and he entered a fully negotiated guilty plea in exchange for a 50-year sentence. The Court said that that fully negotiated guilty plea waived any claim that he might have had under Miller. The same is true here. Petitioner entered a valid fully negotiated guilty plea, agreed to a 40-year sentence. She waived any challenge to challenge that sentence as excessive, and so she cannot now obtain relief under subsection B-5. Again, if the legislature wants to change that, it can. It can put that within the statute. It hasn't done so. If this Court was to hold the State to the forfeiture of that issue, why shouldn't we allow the petitioner a chance to amend the petition, perhaps to show duress? I mean, if the petitioner showed duress, it would fall within subsection C. The petitioner would have to show duress for the entire, I think, 14-year-plus period. And duress, this Court has defined as a person who is under duress under 214-01C where the person failed to timely file because they were coerced not to do so by the use or threat of force against the litigant. Petitioner has been incarcerated in Dwight Correctional Center for the 14-plus-year period. Her husband is not at the Dwight Correctional Center. And so the idea that she could suggest that she was under duress for that entire period is just not something that could be proved. But putting that to the side, she claims that she recognizes the impact of domestic violence on her. She doesn't state when she discovered that. She doesn't allege when that happened. And so it's just on this record, you know, she has never asserted that. She did file a motion to reconsider in the trial court. And her claim was that the clock starts when subsection B-5 was enacted because it would be fundamentally unfair not to give her relief. There's never been an allegation of duress. So to Your Honor's point, that allegation at this point, even though we've allowed, you know, the petitioner could raise any claim due to the procedural error here, is simply not supported by anything in the record. The forfeiture question, Your Honor, the trial court did dismiss the petition because Petitioner entered a fully negotiated guilty plea. And so even if the court were to remand this back, that would still be a basis on which the trial court could dismiss the 214-01 petition. We are appellee in the appellate court. That's an issue that is present in the case. The trial court relied on it. And this court has repeatedly stated that the court can affirm the circuit court's judgment on any ground. And specifically here, the circuit court did rely on that as a basis for dismissing the petition. So the court should consider it as an alternative ground. The main question here is the timeliness. On page 20 of our brief, we've quoted People v. Muddish, which I mentioned before, where the court says that the showing of diligence that the petitioner must demonstrate to obtain relief pursuant to Section 214-01 does not obviate the need to file the petition within the applicable limitations period. So they are two separate questions. Diligence only comes into play once the petition is timely filed. This petition was not timely filed. Counsel mentioned the voidness exception. The voidness exception is codified in Section 214-01. It is in Subsection F, and it relates to the preexisting remedies that this court is well aware of for void judgments that can be challenged at any time in any proceeding. So the legislature did put that within Section 214-01. It chose not to accept B-5 claims. In the end, the General Assembly considered the purpose for Subsection B-5, and it deliberately chose not to subject Subsection B-5 claims to the statute of limitations stated therein. If the legislature wants to change that, it is free to do so. But at this time, petitioner's claim is time barred, and relief is precluded due to her valid negotiated guilty plea. So unless the court has any further questions, we again ask the Court to reverse the appellate court's judgment and affirm that of the trial court. Thank you, counsel. Agenda number 6, number 127169, People of the State of Illinois v. Angela Wells, will be taken under annoyance.